UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| ROBBIE S., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00021-TWP-KMB |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

*Pro se* Plaintiff Robbie S.[1] requests judicial review of the final decision of the Commissioner of the Social Security Administration (the "SSA"), denying his application for Disability Insurance Benefits under the Social Security Act. For the following reasons, the Court **affirms** the decision of the Commissioner.

### I.    PROCEDURAL BACKGROUND

On September 2, 2020, Robbie S. filed an application for Disability Insurance Benefits, alleging a disability onset date of September 1, 2015. (Filing No. 4-8 at 2-6.) His application was initially denied on January 4, 2021, (Filing No. 4-5 at 8), and upon reconsideration on March 4, 2021, (Filing No. 4-5 at 14). Due to the coronavirus pandemic, Administrative Law Judge Stuart T. Janney (the "ALJ") conducted a telephone hearing on July 12, 2021. Robbie S., represented by counsel, and a vocational expert ("VE") participated and testified. (Filing No. 4-3 at 4-35.) During the hearing, Robbie S. amended his alleged onset date to April 14, 2018. (Filing No. 4-3 at 5-6.)

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

The ALJ issued a decision on August 3, 2021, concluding that Robbie S. was not entitled to benefits. (Filing No. 4-2 at 16-34.) The Appeals Council denied review on December 20, 2021. (Filing No. 4-2 at 4.) On January 13, 2022, Robbie S. requested that the SSA allow additional time to file a civil action. (Filing No. 4-2 at 3.) On February 23, 2022, Robbie S. filed this civil action, asking the Court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner.[2] (Filing No. 1.)

## II.     STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work but any other kind of gainful employment which exists in the national economy, considering his age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, he is not disabled despite his medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i). At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a

---

[2] The Commissioner has not asserted that the civil filing was untimely.

claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then his residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [his] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996), 1996 WL 374184). At step four, if the claimant can perform his past relevant work, he is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given his RFC and considering his age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). The claimant is not disabled if he can perform any other work in the relevant economy. *Id*.

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. For the purpose of judicial review, "substantial

evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

### III.   FACTUAL BACKGROUND

When Robbie S. filed his application, he alleged that he could no longer work because of sciatic nerve pain, degenerative disc disease, nerve damage in his back, high cholesterol, hypertension, heel pain in his feet, possible arthritis in his knees, loss of feeling in his back and right leg, anxiety, depression, an undiagnosed knot on the back of his neck, a damaged/possibly torn right rotator cuff, and a knot on his stomach that was a possible hernia. (Filing No. 4-9 at 5.) He was 50 years old on his amended alleged onset date. (Filing No. 4-3 at 5.) Robbie S. had

completed the ninth grade and worked as an automotive body technician and assistant manager of an automotive retailer and paint supplier. (Filing No. 4-9 at 6-7.) He had not earned a GED. (Filing No. 4-3 at 10.) The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Below are the facts relevant to the Court's disposition of this case.

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and concluded that Robbie S. was not disabled. (Filing No. 4-2 at 33-34.) The ALJ found that Robbie S. last met the insured status requirements of the Social Security Act on December 31, 2020 (the "date last insured").[3] (Filing No. 4-2 at 21.) At step one, the ALJ found that Robbie S. had not engaged in substantial gainful activity[4] since September 1, 2015. *Id*. At step two, the ALJ found that Robbie S. "had the following severe impairments: lumbar spine scoliosis and degenerative disc disease with right leg radiculopathy; thoracic spine degenerative disc disease; persistent depressive disorder; generalized anxiety disorder; obsessive compulsive disorder; and level 2 obesity." (Filing No. 4-2 at 22 (citation omitted).) At step three, the ALJ found that he did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Filing No. 4-2 at 22-23.) After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except he can frequently climb ramps and stairs, and can occasionally climb ladders, ropes, and scaffolds. He can

---

[3] Robbie S. must prove the onset of disability on or before his date last insured to be eligible for Disability Insurance Benefits. *See Shideler v. Astrue*, 688 F.3d 308, 311 (7th Cir. 2012); *see also* 20 C.F.R. § 404.131. The ALJ's subsequent findings were limited to the period at issue ending on the date last insured. (*See, e.g.*, Filing No. 4-2 at 21.)

[4] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

frequently balance, stoop, kneel, crouch, and crawl. He can understand, remember, and carry out rote or routine instructions that require the exercise of occasional independent judgment or decision-making for the two-hour segments that make up an eight-hour workday with normal breaks. He cannot carry out complex instructions. He can maintain concentration, persistence, and pace sufficient for work with a variable pace or end-of-day production goals, but not for fast-paced work such as work at a moving conveyor belt. He can tolerate occasional work-related interaction with coworkers, supervisors, and the public.

(Filing No. 4-2 at 22-23.) At step four, the ALJ found, considering the VE's testimony and Robbie S.'s RFC, that he could not perform his past relevant work the way he actually performed it in a composite job as a department manager and store laborer. (Filing No. 4-2 at 32.) At step five, the ALJ found, considering the VE's testimony and Robbie S.'s age, education, work experience, and RFC, that he could have performed other work with jobs existing in significant numbers in the national economy in representative occupations like an industrial sweeper, laundry laborer, and cleaner II. (Filing No. 4-2 at 32-33.)

## IV. DISCUSSION

While Robbie S. was represented by counsel during the hearing, he proceeds with his appeal without representation and has submitted pleadings to the Court—his Complaint and two briefs—that make virtually the same assertions of error regarding the ALJ's decision. (*See* Filing No. 1 at 3; Filing No. 7 at 1-2; Filing No. 8 at 1-2.) Because Robbie S. proceeds *pro se* in this action, the Court will liberally construe his pleadings and consider any issues that he has raised to the extent the Court finds it necessary to resolve the appeal. *See, e.g., Alvarado v. Litscher,* 267 F.3d 648, 651 (7th Cir. 2001).

Robbie S. asserts that he has requested on several occasions and to no avail that the SSA provide him a copy of the audio recording of the hearing "to compare the recording to what is in the final decision [of the Commissioner]." (Filing No. 8 at 1.) According to the Social Security Act, the Court "shall have power to enter, *upon the pleadings and the transcript of the record,* a

6

judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (emphasis added). This means that the Court may not rely on evidence that is not in the certified record because Congress has not authorized the Court to do so, *i.e.*, the Court does not have jurisdiction to rely on evidence that is outside the pleadings and the certified transcript. *Eads v. Sec'y of Dep't of Health & Hum. Servs.*, 983 F.2d 815, 817 (7th Cir. 1993); *Papendick v. Sullivan,* 969 F.2d 298, 302 (7th Cir. 1992), *cert. denied*, 113 S.Ct. 968 (1993), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 563 (7th Cir. 1999) (holding that the issue exhaustion doctrine does not apply to issues that were not raised during the SSA's inquisitorial administrative proceedings). However, the Court can compare the ALJ's decision with the transcript of the hearing.

Robbie S. predominantly contends that the ALJ's decision contained untrue statements about his testimony. In particular, he asserts:

> In September of 2015[,] due to physical and mental conditions[,] Robbie [S.] was unable to perform the requirements needed to meet sustainable employment. During the hearing with the Administrative Law judge on July 12, 2021[,] there were several points that were untrue when the decision was sent by the ALJ.
>
> It was stated that Robbie [S.] went to an orthopedic surgeon[,] of which he did not. It was stated that he was in mental health treatment[,] of which he was not. It was made out that he cleared saplings from three acres of land with a chainsaw[,] of which he didn't.

(Filing No. 8 at 1.)

When evaluating a claimant's subjective statements about the intensity and persistence of symptoms, the ALJ often must make a credibility determination concerning the limiting effects of those symptoms. *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). Reviewing courts "may disturb the ALJ's credibility finding only if it is 'patently wrong.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015)). If a

7

fully favorable determination cannot be made based solely on the objective medical evidence, SSR 16-3p directs the ALJ to consider "all of the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms . . . ." SSR 16-3p (S.S.A. Oct. 25, 2017), 2017 WL 5180304, at *6-8. This includes the regulatory factors relevant to a claimant's symptoms, like daily activities, the location, duration, frequency, and intensity of pain or other symptoms, factors that precipitate and aggravate the symptoms, the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; and treatment, other than medication, an individual receives or has received for relief of pain or other symptoms. *Id*. at *7-8; 20 C.F.R. § 404.1529(c)(3). The ALJ need only "discuss the factors pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304, at *8. The ALJ should also consider any inconsistencies within the evidence, including conflicting statements made by the claimant and others like treating sources. 20 C.F.R. § 404.1529(c)(4). The ALJ may also consider inconsistencies between the severity of symptoms that a claimant described to the SSA compared with when he was seeking treatment and his reported response to treatment. *See e.g.*, *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005).

      The ALJ provided a fairly thorough summary of Robbie S.'s testimony, including that he had back pain that worsened in 2015, he could not stand for more than 20 minutes at a time, sit for more than 30 minutes at a time, and he could lift a bag of dog food weighing around 20-25 pounds if he lifted it the proper way. (Filing No. 4-2 at 25-26.) But the ALJ concluded that Robbie S.'s statements concerning the intensity, persistence and limiting effects of his symptoms were not "entirely consistent" with the medical evidence and other evidence in the record. (Filing No. 4-2 at 26.) The Seventh Circuit has explained that "[w]hen a claimant argues that there are fatal gaps or contradictions in the administrative law judge's opinion, thus appealing to the important

8

principle of administrative law that the agency provide a rational articulation of the grounds of its decision, [reviewing courts] give the opinion a commonsensical reading rather than nitpicking at it." *Johnson*, 189 F.3d at 564 (citations omitted).

Robbie S. contends that the ALJ's summary of his testimony about the treatment that he received for his back pain—that he went to a chiropractor, urgent care, an orthopedic surgeon, and used a decompression table—is not true because he never said he went to an orthopedic surgeon; in fact, he testified that he did not want to go into further debt because of medical bills. (Filing No. 8 at 1.) The ALJ's summary does incorrectly state that Robbie S. "said he went to urgent care, an orthopedic surgeon, and used a decompression table." (Filing No. 4-2 at 25.) But in the same paragraph the ALJ explained that Robbie S. "said he could not afford orthopedic surgery as he had a $5,000.00 deductible. He said he worried about all the medical bills and he was not able to sleep at night. He did not want to go into debt." *Id*. Taken together, the ALJ did not mischaracterize Robbie S.'s relevant testimony about him not being able to afford a referral to an orthopedic surgeon.

Robbie S. also contends that the ALJ misstated that he was in mental health treatment that was helpful, when he "was not in any mental health treatment except for medicine that was prescribed by a family doctor. Robbie [S.] was in counseling for alcohol as directed by the court following a DUI in 2009." (Filing No. 8 at 1-2.) The ALJ's summary of Robbie S.'s testimony stated that "[h]e said he was in mental health treatment, which was helpful." (Filing No. 4-2 at 25.) During the hearing, the ALJ asked, "And then, it looks like you do take some medications for mental health conditions like anxiety and depression also. Are those helpful? Does interacting with other people affect your anxiety?" (Filing No. 4-3 at 32-33.) Robbie S. simply responded, "Yes." (Filing No. 4-3 at 33.) As such, Robbie S. may have been saying that he had anxiety

9

around people, rather than saying his medications were helpful. Moreover, the ALJ's summary does not suggest that he thought Robbie S. testified that he was in formal, specialized mental health treatment. There is no indication that the ALJ discredited Robbie S. because of the mistaken belief that he testified untruthfully or exaggerated that he had received specialized mental health treatment rather than only being prescribed medication by his primary care physician, Jennifer L. Richardson, M.D. ("Dr. Richardson").

The ALJ's summary of the medical record explained that Robbie S. was prescribed medications by Dr. Richardson, he reported to his provider in September 2018 that the "medications were helping with his depression and anxiety," and he reported in September 2020 that his "moods were good" on those same medications. (Filing No. 4-2 at 28.) The ALJ explained, "This generally supports a conclusion that his symptoms improved and stabilized with a course of medication therapy from his own medical source. He did not require referral to outpatient or inpatient behavioral therapy." *Id*. On September 25, 2018, Dr. Richardson's office notes state that Robbie S. was taking "his Lexapro, Wellbutrin, and Xanax. This helping with his depression and anxiety." (Filing No. 4-13 at 16.) On May 20, 2019, his "moods [were] stable on his Lexapro and Wellbutrin and [he took a] Xanax for anxiety. All other symptoms [were] negative." (Filing No. 4-13 at 12.) Dr. Richardson's office notes on September 10, 2020, reported that Robbie S.'s "[m]oods [were] good," and he had "[n]ormal mood and affect" on examination. (Filing No. 4-13 at 11.) The ALJ's summary of the medical record is accurate. And even if Robbie S. did not necessarily testify that his medications helped his mental impairments, there is substantial evidence in the medical record that he reported to Dr. Richardson that his medications helped. The record reasonably supports the ALJ's conclusions about the severity of Robbie S.'s mental symptoms, and there is no indication that the ALJ used any of this specific evidence to imply that Robbie S. was

10

not truthful. Accordingly, the Court finds that any of the inaccuracies in the ALJ's summary of Robbie S.'s testimony about his mental health treatment are not a basis to disturb the ALJ's credibility finding or the ALJ's decision more generally.

Robbie S. further contends that he "used a chainsaw but it was not used to clear an entire three acres of land." (Filing No. 8 at 2.) The ALJ summarized his testimony that "[h]e said he last used a chainsaw two years earlier when he helped his son clear three acres of saplings." (Filing No. 4-2 at 26.) The ALJ concluded that "[t]he ability to use a chainsaw to clear so much acreage seems flatly inconsistent with the degree of limitation he alleged in his testimony." (Filing No. 4-2 at 26.) The ALJ also explained that Robbie S. "engaged in a broad range of activities. This included clearing acreage of saplings with a chainsaw, something that would seem to be very difficult given the strength demand limitations he described at the hearing." (Filing No. 4-2 at 28.) During the hearing, the ALJ asked, "There was a note, it said you had cut your hand with a chainsaw, this was maybe two, three – two and a half years ago. What were you doing with the chainsaw? Do you remember?" (Filing No. 4-3 at 25.) Robbie S. responded, "I was cutting twigs over here on the – my son's place." *Id*. The ALJ asked, "Well, they must have been bigger than twigs if they needed a chainsaw. Was it, like, had a tree fallen or a branch, or what was it?" (Filing No. 4-3 at 26.) Robbie S. replied:

> Yeah. Well, what it was is, it ha[d] grown up, three acres, it grown up and hadn't been brush logged in a few years. And you get the saplings growing, and then, you can't really – you know, you can't really go over it with a brush saw or nothing like that. So, yeah, I was actually cutting them down and moving them back. And then, I was under one of them, pulling the chainsaw up, and it slipped, and it hit my hand.

*Id*. He added that "they wanted to live on it, so, that's what we were doing." *Id*. But no other testimony was provided to further elaborate or qualify the activity that Robbie S. had performed.

The Seventh Circuit has explained that "an ALJ has the burden of inquiry only when

11

drawing inferences about the severity of a condition from the failure to seek or continue medical care, because lack of money or insurance might explain [a] possible discrepancy." *McHenry v. Berryhill*, 911 F.3d 866, 873-74 (7th Cir. 2018) (citation omitted). The ALJ does not have to probe into the extent of a discrepancy involving the claimant's testimony and his reported activities in the record; although, the claimant is free to develop the record about the extent of any possible discrepancy and the ALJ must consider the full testimony. *See id*. And when a claimant is represented by counsel during the hearing, the ALJ is entitled to presume that he has made his best case for benefits. *Skinner v. Astrue*, 478 F.3d 836, 842 (7th Cir. 2007).

The ALJ was entitled to consider Robbie S.'s testimony as it was presented during the hearing. Robbie S. was obviously actively using a chainsaw, he testified that he was clearing saplings that had grown up on his son's land, and his testimony implied that he at least assisted in clearing three acres of land. There were no further details provided about how many people were clearing saplings with a chainsaw or how long Robbie S. was engaged in the activity either during a stretch of time or in total. The ALJ did not mischaracterize the record on any relevant point. And the Court is limited to evaluating whether the ALJ's credibility finding was patently wrong based on the record that he considered, rather than considering any additional factual contentions presented on appeal. Accordingly, Robbie S.'s specific arguments that the ALJ's inaccurately summarized his testimony do not demonstrate that the ALJ's credibility finding was patently wrong.

The Commissioner points out that the ALJ's credibility finding need not be perfect. (Filing No. 9 at 7.) The Seventh Circuit has explained that the ALJ's credibility evaluation need not be perfect to be upheld according to the deferential standard of review. *See McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011) (upholding the ALJ's credibility determination despite finding

"deficiencies" such that there was "some merit in two out of three of [the claimant's] attacks" because the ALJ had cited to record evidence that undermined the limiting effect of the claimant's symptoms). The Commissioner also contends that the ALJ considered other activities:

> In addition to clearing acreage of saplings with a chainsaw, the ALJ also considered [Robbie S.'s] activity working at home on auto-body repairs of a Ford Mustang car during the period he claimed to be disabled. The ALJ considered inconsistencies [with his] initial description of his daily activities, in which he denied performing work after the alleged onset date of disability, five or six years before the hearing, until confronted with contrary evidence from the record.

(Filing No. 9 at 10-11 (citations omitted).) The ALJ explained:

> [Robbie S.] also initially denied performing work after the alleged onset date of disability until confronted with contrary evidence from the record. Only then did he admit to doing some work after the alleged onset date. When confronted with the post-onset work references at Exhibit 3F, page 86, Exhibit 5F, pages 23 and 32, and Exhibit 9F, page 3, the claimant described some of the work he performed. He said he did some odd jobs, such as auto bodywork. He testified that he worked at a slow pace. He testified that in September 2020, he finished a car he had been working on for three years. He testified that the car was a restoration project involving a Ford Mustang. He testified that his friend brought it to him gutted, and that he painted it and did the bodywork. He testified that at the most, he had worked on the project perhaps 20 hours per week. The claimant had originally alleged onset in 2015. In March 2016, a chiropractor wrote, "Patient states he sanded yesterday and did some car body work and has had some lower back soreness since then" (3F/86). In June 2016, Dr. Richardson wrote, "Can work all day with excessive physical labor w/o pain" (5F/32). This handwritten notation seems markedly inconsistent with the claimant's allegation of being unable to work more than 20 hours per week. In April 2017 and February 2021, Dr. Richardson commented that the claimant continued to work at home (5F/23 and 9F/3). Thus, it appears the claimant's post-onset work activity may have been more demanding than alleged.

(Filing No. 4-2 at 28-29.)

Liberally construing his pleadings, Robbie S. persuasively challenges the ALJ's summation of this hearing testimony. There is no indication that Robbie S. was or needed to be confronted with the medical record before he disclosed details about his work activity at home. The ALJ asked, "And when did you last work in any – when did you last work?" (Filing No. 4-3 at 11.) The transcript shows that Robbie S. responded, "It was about five years, six years ago," but the

13

transcript also indicates that the response was inaudible, and then the ALJ went off the record so that a technical issue could be addressed concerning the volume of Robbie's testimony by telephone. *Id*. When the hearing recording resumed, the transcript indicates that the ALJ asked, "So, you last worked five or six years ago. Did you ever do any work in the last five or six years for cash?" *Id*. Robbie S. then volunteered, "I tried to do some out in my garage, some, you know, side jobs for automotive purposes like bodywork and stuff." *Id*. The ALJ replied, "Okay." *Id*. And then including during the following exchange with the ALJ, Robbie S. clarified further:

> [Robbie S.] But it – I can't perform the – like, I, you know, before all this happened. I just – you know what I mean, I can't work a solid week. I can't stand all day. And so, basically – there were jobs I did, though. The – it took them – it took me too long. And then, you know, basically, and then, I just basically didn't get any more jobs. Because I tried to stay busy. The chiropractor said, you know, you need to keep motivated. So, I did my best on that. But it's not nothing to, you know, put food on the table.
>
> [ALJ] Okay.
>
> [Robbie S.] Or something like that.
>
> [ALJ] When was the last time you remember doing any of the work out of your home?
>
> [Robbie S.] It's probably – let's see, last September or something. I finished up on a guy's car. And he come and got it. But I had it for three years. So, like I said, it's no fast-paced process when I did this.
>
> [ALJ] Okay.
>
> [Robbie S.] I'm the type of person that likes to keep my mind occupied, you know what I mean. So –
>
> [ALJ] Okay. Do – when you still doing that [sic], if you were to estimate about how many hours per week you would put into the work that you did at home?
>
> [Robbie S.] At the maximum, 20.

(Filing No. 4-3 at 12.) Robbie S. provided other relevant testimony in response to further questioning by the ALJ that is consistent with the ALJ's summary. (*See* Filing No. 4-3 at 13.)

Despite the ALJ's insinuation that Robbie S. was less forthcoming about his work activity than the record indicates, the ALJ did demonstrate that the medical record appeared inconsistent with his relevant testimony.[5] On March 31, 2016, Robbie S. reported to Dr. Richardson that he "sanded" and "did some car bodywork" the day before, and he had "some lower back soreness since then." (Filing No. 4-12 at 87.) Contrary to Robbie S.'s testimony that he worked a "maximum" of "20" hours, on June 30, 2016, Dr. Richardson recorded that Robbie S. reported that he could "work all day with extensive physical labor [without] pain."[6] (Filing No. 4-13 at 38.) Contrary to Robbie S.'s recollection during the July 2021 hearing that he last did any work activity in his garage "last September [2020] or something," Dr. Richardson recorded, on February 9, 2021, that he "works at home now." (Filing No. 4-13 at 75.) To the extent that the ALJ's relevant conclusions were supported by substantial evidence that he identified in the record, the Court cannot disturb the ALJ's credibility finding according to the deferential standard.

Moreover, the ALJ relied on other valid reasons to discredit Robbie S.'s testimony about his subjective symptoms. Robbie S. contends on appeal that he "is not able to physically sit or stand at a job for hours at a time without being in pain." (Filing No. 8 at 2.) The ALJ partially relied on the normal findings and assessments of a consultative examiner who evaluated Robbie S. just before his date last insured and found virtually no physical limitations, including with sitting, standing, or walking. (Filing No. 4-2 at 31 (citing Filing No. 4-13 at 57-64).)

The ALJ also properly relied on the level of treatment that Robbie S. received for his back pain, the frequency of treatment, and his reported response to treatment. The ALJ explained that

---

[5] Robbie S. was not completely forthcoming about his activities generally. Recall that he testified that he was cutting twigs with a chainsaw, and then he later admitted—when pressed by the ALJ—to helping clear acreage of saplings (that a brush hog could not get through).
[6] In one respect, Dr. Richardson's handwritten notation is difficult to read. The ALJ thought Dr. Richardson wrote "excessive" physical labor. The Court thinks it says extensive. But regardless, the practical meaning is the same in the context of the ALJ's credibility evaluation.

Robbie S.'s chiropractic visits decreased in 2015, he reported doing better, and he was no longer taking pain medication; Dr. Richardson noted that he had improved with chiropractic care rather than requiring surgery; and he later returned to the chiropractor for just two more decompression sessions in August 2020, and he again reported that his pain had gotten better with that treatment. (Filing No. 4-2 at 26-27.)  The ALJ asked Robbie S. about the gap in chiropractic treatment in 2018 and 2019.  (Filing No. 4-3 at 32.)  Robbie S. testified that use of a "[d]ecompression table is $35 right out of pocket, and the insurance won't cover it," and when he was going "weekly, you know, three times, $35, yeah, it was – three times a week, it added up [to] quite a bit a month."  *Id*.  The ALJ considered Robbie S.'s explanation for the limited treatment, but based on the ALJ's summary of the record, he concluded, "This seems inconsistent with his testimony that the frequency of his treatment decreased due to cost.  According to the medical evidence of record, it was because he found improvement with the treatment he had."  (Filing No. 4-2 at 26.)

On October 5, 2015, Robbie S. reported to Dr. Richardson that he had "[p]ain of 7 on a scale of 0-10 in his low back and right leg," he had "chronic numbness and tingling in the anterior right thigh," his pain was "usually a 5 to a 7 most days and [could] get worse," he was seeing a chiropractor, he had "muscle spasms in the back of his right leg, and the leg itself [was] weak," he "had to quit his job because he could no longer stand long enough to do the job," and he was "not sure what he [was] going to do," because he did not feel "qualified" for work that did "not involve standing or lifting."  (Filing No. 4-13 at 33.)  Robbie S. continued going to the chiropractor through August 18, 2016, when he reported that "his lower back ha[d] been doing pretty good in the mornings," "his lower back ha[d] been a little sore after more physical activity, but [was] very manageable," and he had a habit of using an "inversion table for five minutes" and "icing his back every night and also in the evenings."  (Filing No. 4-12 at 54.)  After he stopped seeing the

chiropractor, he repeatedly reported to Dr. Richardson at virtually every visit that his "[p]ain [was] currently 0 on a scale of 0-10." (Filing No. 4-13 at 31 (January 17, 2017); Filing No. 4-13 at 29 (April 17, 2017); Filing No. 4-13 at 22 (January 30, 2018), Filing No. 4-13 at 16 (September 25, 2018); Filing No. 4-13 at 12 (May 20, 2019).) When Robbie S. returned to the chiropractor in August 2020, he attended only two sessions and reported at the second visit that his pain "had gotten better since the last visit." (Filing No. 4-11 at 23.) The ALJ properly considered Robbie S.'s explanation for the limited treatment that he sought for his back pain, but the ALJ considered the record and reached the conclusion that Robbie S.'s reports predominantly supported that the lack of treatment coincided with an improvement with his relevant symptoms. Based on the medical record, the Court finds the ALJ's conclusion reasonable. Accordingly, based on all the above taken together, the Court does not find that the ALJ's credibility determination was patently wrong.

      Robbie S. explained that he "does not have a [h]igh school diploma or GED that is required with most employers now." (Filing No. 8 at 2.) However, the VE listened to his testimony about his education level. (*See* Filing No. 4-3 at 10.) The ALJ verified that the VE had considered the exhibits and Robbie S.'s testimony concerning the relevant vocational information. (Filing No. 4-3 at 28.) The VE testified that an individual with the limitations that the ALJ ultimately found to comprise Robbie S.'s RFC would be able to perform representative occupations with jobs existing in significant numbers in the national economy. (*See* Filing No. 4-3 at 29-30.) The VE also testified that even if Robbie S. were limited to light exertional work, there were a significant number of jobs that he could have performed, and the ALJ recognized that only if Robbie S. was limited to sedentary or sit-down work would he be considered disabled based on the SSA's regulations that consider his age, education, and work experience. (*See* Filing No. 4-3 at 30.) The

VE's testimony is substantial evidence that supports the ALJ's conclusion at step five that there was other work that Robbie S. could have performed through his date last insured. *See, e.g., Milhem v. Kijakazi*, 52 F.4th 688, 2022 WL 16707086, at *6 (7th Cir. 2022). Accordingly, Robbie S. has not demonstrated the need to remand for further consideration of his education level.

## V.     CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). For the reasons stated above, the Court finds no legal basis to reverse the ALJ's decision. The final decision of the Commissioner is **AFFIRMED**. Robbie S.'s appeal is **DISMISSED**.

**SO ORDERED.**

Date: 11/22/2022

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Robbie S.
6435 South Mentor Rd.
Birdseye, Indiana  47513

Catherine Seagle
SOCIAL SECURITY ADMINISTRATION
catherine.seagle@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov